438 So.2d 622 (1983)
Mrs. Doris Jackson HOLMES, Individually and as Succession Representative of the Estate of Lem Holmes and as Tutrix of the Minor Children, Kathryn, Sherrie, Lem, Jr., Suzette, Brian, Cedric and Sarita Holmes
v.
J. POTTHARST, Jr., His Heirs and Estate, Mrs. Titine M. Pottharst, Alfred Baham, ABC Insurance Company and XYZ Manufacturing and Sales Company.
No. CA-0656.
Court of Appeal of Louisiana, Fourth Circuit.
September 13, 1983.
Rehearing Denied October 27, 1983.
*623 Sidney L. Shushan, Guste, Barnett & Shushan, New Orleans, for plaintiff-appellant.
Esmond Phelps, II, John P. Manard, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for defendant-appellee.
Before BARRY and WARD, JJ., and CHIASSON, Judge Pro Tempore.
BARRY, Judge.
In this executive officer action, a co-defendant, Alfred Baham, filed for summary judgment asserting prescription of an alleged survival action and no cause of action as to the wrongful death claim. Summary judgment was granted with prejudice (without reasons) and plaintiff was allowed leave to file an amended petition to allege an intentional tort by Mr. Baham[1]. Plaintiff's brief addresses only the wrongful death action, but we will resolve both claims since "the judgment" was appealed.
Mrs. Doris Holmes, as surviving spouse and on behalf of her seven minor children, filed suit February 6, 1981 asserting wrongful death and survival actions[2] as a result of the death of her husband, Lem Holmes. Defendants are several executive officers, including Alfred Baham, of Mechanical Equipment Company, Inc. (MECO). The petition alleges during Holmes' employment as a sandblaster at MECO from 1966 to 1970 he contracted silicosis, ultimately causing his death on February 11, 1980. Mrs. Holmes further states her husband was unaware of his condition until March, 1978 when he was diagnosed upon admission to Charity Hospital.
Although the survival action and wrongful death claim arise from an alleged common tort, each is a separate and distinct cause of action. The claims arise at different times and each concerns damages for different losses and injuries. The survival action arises simultaneously with the commission of the tort and survives the death of the injured party. It transmits to certain survivors (beneficiaries) the right to recover damages which the victim was entitled to recover from the time of injury to death. When the damage is not immediately apparent, prescription begins when the proverbial "reasonable person" should be aware of both the tort and the damages. Guidry v. Theriot, 377 So.2d 319 (La.1979). See also Stone, Louisiana Civil Law Treatise-Tort Doctrine § 120 (1977).
Holmes did not file a tort suit within one year of the diagnosis in March, 1978 and the survival action was subject to a plea of prescription. Guidry, supra. See also Johnson, Death on the Callais Coach: The Mystery of Louisiana Wrongful Death and Survival Actions, 37 La.L.Rev. 1, 32-33 (1976).
Plaintiff contends the Trial Judge erred in interpreting Act 147 of 1976[3] to prohibit a wrongful death claim where the unintentional act occurred before October 1, 1976 and the death after October 1, 1976. She argues Smith v. Hurd, 408 So.2d 357 (La.App. 1st Cir.1981), relied on by defendant, is an aberration, not in line with the Louisiana appellate decisions nor with the legislative intent of the act. Plaintiff claims where the wrongful conduct occurs before October 1, 1976 and the damages (including a death) occur after that date, the Act does not bar recovery. Green v. *624 Liberty Mutual Insurance Co., 352 So.2d 366 (La.App. 4th Cir.1977), writ refused 354 So.2d 210 (La., 1978), Talluto v. Patchen, 370 So.2d 618 (La.App. 4th Cir.1979) and Williams v. Aetna Casualty and Surety Co., 362 So.2d 1150 (La.App. 2d Cir.1978).
In Green and Talluto suit was filed by the injured workmen for injuries that occurred before October 1, 1976. The Green and Talluto plaintiffs' causes of action arose prior to the effective date of the amendment and the cases correctly held that the Act could not be applied retroactively to extinguish those vested property rights. Williams was a wrongful death action but does not relate the date of the injured worker's death. The facts as reported do not preclude the possibility that the decedent died before the effective date of the Act. If the death date was before October 1, 1976, a suit for wrongful death was not barred by the Amendment, hence Williams is not persuasive nor authority for plaintiff's position.
The wrongful death action in C.C. Art. 2315 gives beneficiaries the right to recover from the tortfeasor such damages as the beneficiaries have suffered as a result of the victim's wrongful death. Obviously, the action cannot arise until the victim dies and is intended to compensate the beneficiaries for damages they suffer from the moment of death and thereafter.
[A]lthough the wrongful death action arises from a common tort, it is a separate and distinct action from the survival action. It never existed or arose in favor of the victim. (Our emphasis). Guidry, supra, at 326.
Plaintiff's cause of action for the wrongful death of her husband did not arise until his death on February 11, 1980. On that date executive officer suits were prohibited by the 1976 Amendment to LSA-R.S. 23:1032. Therefore, plaintiff had no cause of action for the wrongful death of her husband due to an unintentional act by an executive officer. Smith v. Hurd, supra.
"... The right to tort damages for wrongful death did not exist at common law or in Louisiana until it was conferred by statute. Since it is a creature of the legislature, it is subject to legislative repeal." W.S. Malone and H.A. Johnson, III, Louisiana Civil Law Treatise, Vol. 14, Workers' Compensation Law and Practice, § 366, p. 167.
See also Colorado v. Johnson Iron Works, Ltd., 146 La. 68, 83 So. 381 (La.1919).
Plaintiff asserts:
If the District Court is correct, the results are indeed irrational and unjust. If Smith v. Hurd is correct, the worker or his family can sue later for wrongful conduct of the executive officer who causes a quick death before October 1, 1976. If the wrongful conduct before October 1, 1976, leads to disability after October 1, 1976, the executive officer is liable in damages. But if the wrongful conduct causes disability before and a lingering death after the act, then according to Smith v. Hurd there is no liability. [Citations omitted]
Sympathy will not rectify the apparent inequity and harsh effect of dismissing plaintiff's action. However, our law and jurisprudence are clear and in accord with the specific legislative intent in the 1976 Amendment: "to broaden the class of defendants to be granted immunity from suits by injured employees in tort or delict." Bazley v. Tortorich, 397 So.2d 475, 479 (La. 1981).
The judgment of the trial court is affirmed at plaintiff's costs.
AFFIRMED.
NOTES
[1] A second summary judgment motion was stayed pending this appeal.
[2] LSA-C.C. Art. 2315 provides in pertinent part:

The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children;
* * * * * *
The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased.
[3] Act 147 of 1976, effective October 1, 1976, amended LSA-R.S. 23:1032 to limit civil suits against executive officers to injuries arising from "intentional" acts.