692 So.2d 1203 (1997)
CONCEPT DESIGN, INC. and Stradford Goins, Sr.
v.
J.J. KREBS & SONS, INC., Pepper and Associates, Inc., J.J. Krebs & Sons, Inc./Pepper and Associates, Inc. (Joint Venture), The New Orleans Aviation Board and Jerome Pepper.
No. 96-CA-1295.
Court of Appeal of Louisiana, Fourth Circuit.
March 19, 1997.
*1204 Simeon B. Reimonenq, Jr., John F. Olinde, Douglas L. Grundmeyer, Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P., New Orleans, for Plaintiffs/Appellants.
Rebecca J. King, Middleberg Riddle & Gianna, New Orleans, for Defendant/Appellee.
Before BYRNES, ARMSTRONG and PLOTKIN, JJ.
ARMSTRONG, Judge.
This case involves a claim of third-party beneficiary status under a construction contract. Specifically, a subcontractor, which was terminated by the prime contractor, alleges that it is the third-party beneficiary of the contract between the prime contractor and the owner. Based upon that allegation, the subcontractor sued the owner (the subcontractor also sued the prime contractor based upon alleged breach of the subcontract between the subcontractor and the prime contractor). The trial court found that the subcontractor was not a third-party beneficiary of the contract between the prime contractor and the owner and, based upon that finding, dismissed the subcontractor's claim against the owner (the subcontractor's claim against the prime contractor remains pending). The subcontractor appeals. We affirm.
Defendant New Orleans Aviation Board ("NOAB") planned certain improvements to the New Orleans International Airport. NOAB needed to contract for engineering services for those airport improvements. Some of the money for the airport improvements was to come from the federal government. Consequently, a federal regulation was applicable which required the NOAB to include, in the contract for the engineering services, a provision for the contractor to make good faith efforts to subcontract 25% of the work to a disadvantaged business enterprise ("DBE"). NOAB contracted with J.J. Krebs & Sons, Inc./Pepper and Associates, Inc., A Joint Venture ("Krebs/Pepper") to act as prime contractor for the engineering work. Krebs/Pepper, in turn, subcontracted with DBF, Concept Design, Inc., to perform 25% of the work. However, after some time, but prior to completion of the work, Krebs/Pepper terminated its subcontract with Concept Design, Inc.
Concept Design, Inc. and its President, Stradford Goins, Sr., brought the present action against both Krebs/Pepper and NOAB. The plaintiffs' claims against Krebs/Pepper are not involved in this appeal and are still pending. The plaintiffs' claims against NOAB were met by NOAB with an exception of no right of action. NOAB argued that, as the plaintiffs were not parties to the contract between NOAB and Krebs/Pepper ("the prime contract"), the plaintiffs could have no claims against NOAB based upon any alleged breach of the prime contract. In other words, because NOAB contracted only with Krebs/Pepper, and only Krebs/Pepper contracted (subcontracted) with Concept Design, Inc., there is no contractual privity between NOAB and Concept Design, Inc. The plaintiffs responded that they are third-party beneficiaries of the prime contract's provision that Krebs/Pepper should make a good faith effort to subcontract 25% of the work to a DBE (and certain other DBE provisions of the prime contract), and therefore, they have rights against NOAB under the prime contract. The trial court found that the prime contract did not create obligations of NOAB toward Concept Design, Inc.
As is to be expected from the fact that the prime contract is for NOAB's purchase of services from Krebs/Pepper, most of obligations for performance set out in the prime contract are obligations of Krebs/Pepper, not NOAB. Aside from payment of the contract price, NOAB's obligations are relatively few and are listed in the prime contract as follows:
2.0 SERVICES TO BE PROVIDED BY BOARD:

*1205 2.1.1 The Board shall provide information regarding its requirements for the project. This shall include Scope and Design Criteria outlining required Board's objectives, schedule, constraints, criteria, flexibility, expandability, special equipment, systems, site requirements, and space requirements.
2.1.2 The Board shall provide representatives authorized to act in its behalf with respect to the project. The Board or its representatives shall examine documents submitted by the Engineer and shall render decisions pertaining thereto promptly, to avoid unreasonable delay in the progress of the Engineer's work.
2.1.3 The Board shall furnish such auditing services as may be required to ascertain the Engineer's compliance with the Contract and the stated overhead rate, paid to the Engineer under this Contract.
2.1.4 If the Board observes or otherwise becomes aware of any fault or defect in the Project or non-conformance with the contract Documents, the Board shall give prompt written notice thereof to the Engineer.
As can be seen, NOAB's obligations focused on communication, liaison and cooperation with Krebs/Pepper so as to facilitate the latter's work. Notably absent from the list of NOAB's obligations is any reference to Concept Design, Inc. as to subcontractors or DBE's generally.
The plaintiffs rely principally upon the prime contract's DBE provisions which state as follows:
15.2 Disadvantaged Business Enterprise (DBE) Assurances

(1) Policy. It is the policy of the Department of Transportation (DOT), the City of New Orleans, and the New Orleans Aviation Board that Disadvantaged Business Enterprises (DBE) as defined in 49 CFR Part 23 shall have the maximum opportunity to participate in the performance of contracts financed in whole or in part with Federal funds under this agreement. Consequently, the DBE requirements of 49 CFR Part 23 apply to this Contract.
(2) DBE Obligations. The Engineer agrees to ensure that Disadvantaged Business Enterprises as defined in 49 CFR Part 23 have the maximum opportunity to participate in the performance of contracts and subcontracts financed in whole or in part with Federal funds provided under this agreement. In this regard, the Engineer shall make a good faith effort to contract for a total of 25% of the contract fee with a firm which has been certified by the Board as a Disadvantaged Business Enterprise.
The Engineer agrees to comply with all requirements for the Board's Disadvantaged Business Enterprise Plan.
The first of these paragraphs puts Krebs/Pepper on notice as to the policy of NOAB and as to applicable regulations. That policy and those regulations require, in effect, that contracts will include an obligation of the contractor to make a good faith effort at obtaining DBE participation in the work. The second paragraph then in fact obligates "the Engineer", i.e. Krebs/Pepper, to make a good faith effort to subcontract 25% of the work to a DBE and to comply with NOAB's DBE plan. Thus, these two paragraphs create obligations of Krebs/Pepper, and corresponding rights of NOAB, but not obligations of NOAB.
Under Louisiana law, a contract for the benefit of a third party is referred to as a stipulation pour autrui. See, e.g. Whitney National Bank v. Howard Weil Financial Corp., 93-CA-1568 (La.App. 4th Cir. 1/27/94), 631 So.2d 1308, 1310.[1] "In order to *1206 establish a stipulation pour autrui there must be a clear expression of intent to benefit the third party. The third party relationship must form the consideration for a condition of the contract; the benefit may not be merely incidental to the contract." State, In re Adoption of S.R.P., 555 So.2d 612, 618 (La.App. 4th Cir.1989), writ denied, 556 So.2d 1288 (La.1990). A contract, in order to constitute a stipulation pour autrui, must be "in writing and clearly manifest an intention to confer a benefit upon a third party". DePaul Hospital v. Mutual Life Ins. Co., 487 So.2d 143, 146 (La.App. 4th Cir.1986).
In the present case, it might be concluded plausibly that there is an intent expressed in the prime contract to confer a benefit, a subcontract for 25% of the work, on a third party, a DBE, such as Concept Design, Inc. But, assuming that to be the case, it is apparent that the prime contract created an obligation upon the part of Krebs/Pepper, not NOAB, to confer the benefit, the subcontract, upon the third party DBE. The prime contract states that Krebs/Pepper, not NOAB, "agrees to ensure that Disadvantaged Business Enterprises as defined in 49 CFR 23 have the maximum opportunity to participate". The prime contract also states that Krebs/Pepper, not NOAB, "shall make a good faith effort" to subcontract 25% of the work to a DBE. Lastly, the prime contract states that Krebs/Pepper, not NOAB, agrees to comply with DBE requirements. Thus, if there is any obligation to a third party beneficiary under the prime contract's DBE provisions, then it is an obligation owed by Krebs/Pepper and not by NOAB. Certainly, the prime contract contains no "clearly expressed" (In re S.R.P., supra; DePaul, supra) intent to create an obligation of NOAB to a third party beneficiary DBE.[2]
The plaintiffs also argue briefly and generally that, aside from their theory of stipulation pour autrui, NOAB is liable to the plaintiffs for negligence in monitoring Kreb's/Pepper's performance of its DBE obligations.
In Tallo v. The Stroh Brewery Co., 544 So.2d 452 (La.App. 4th Cir.), writ denied, 547 So.2d 355 (La.1989), the plaintiffs similarly advanced a negligence theory in the alternative to their theory of stipulation pour autrui, and we rejected that negligence theory based upon lack of a duty of the defendants to the plaintiffs as opposed to the defendants' duty to the party with whom they actually contracted.
Alternatively, the petition also asserts that defendants are guilty of simple negligence in failing to evaluate plaintiffs' application for change of control. Again, those allegations presuppose that defendants had a duty to plaintiffs to consider the application. Based on the pleadings, we find no such duty. As previously noted, defendants voluntarily bound themselves to National Beverage and not the plaintiffs. Any duties created by that contract flow only to the contracting parties and no one else.
544 So.2d at 455. The situation is analogous here. NOAB did not assume any duties toward the plaintiffs. Assuming there was any negligence by NOAB with regard to the administration of the prime contract, that perhaps could give rise to a claim by Krebs/Pepper, but not a claim by the plaintiffs. In the absence of a duty to the plaintiffs, there can be no liability of NOAB for any negligence. Roberts v. Benoit, 605 So.2d 1032 (La.1991); Socorro v. City of New Orleans, 579 So.2d 931 (La.1991).
The plaintiffs also briefly argue that the lack of a contractual obligation or a tort duty by NOAB is a defense of NOAB and may not be determined upon an exception of no right of action. The exception of no right of action determines whether the plaintiff is the proper party to assert a legal right. E.g., Touzet v. V.S.M. Seafood Service, Inc., *1207 No. 96-C-0225 (La.App. 4th Cir. 3/27/96), 672 So.2d 1011, 1012-13; Sattar v. Aetna Life Ins. Co., No. 95-CA-1108 (La.App. 4th Cir. 3/20/96), 671 So.2d 550, 553.
In the present case, the trial court concluded that only Krebs/Pepper, a party to the prime contract, and not the plaintiffs, could make a claim against NOAB for breach of the prime contract. Therefore, the trial court concluded, the plaintiffs have no right of action. Even assuming (without deciding) that an exception of no right of action was not the correct procedural mechanism, the facts that we find to be dispositive (the relevant provisions of the prime contract) are not disputed, so the case could have been decided upon an exception of no cause of action or upon a motion for summary judgment, and the result would have been the same. Thus, regardless of whether the procedural mechanism was correct, the result was correct.
For the foregoing reasons, we AFFIRM the trial court's dismissal of the plaintiffs' claims against NOAB.
AFFIRMED.
NOTES
[1] Article 1978 of the Civil Code, which was enacted as part of the 1984 revision of the Obligations articles, and which addresses agreements for the benefit of a third party, does not use the phrase "stipulation pour autri," but our caselaw has continued to refer to such an agreement as a "stipulation pour autri". In addition to the cases cited in the text see Rosenbloom v. Bauchat, 94-CA-2346 (La.App. 4th Cir. 4/26/95), 654 So.2d 873, 876 ([A] stipulation pour autri is a contract entered into between two parties that stipulates a benefit for a third person ... see La. C.C. art.1978) (per Plotkin, J.)
[2] While the prime contractor's DBE provisions might be viewed as creating an obligation of Krebs/Pepper to a third party beneficiary DBE, that issue is not before us in this appeal as the plaintiffs' claims against Krebs/Pepper were not dismissed by the trial court. Also, the plaintiffs have a claim directly against Krebs/Pepper under their own subcontract with Krebs/Pepper, and without regard to the prime contract.