730 So.2d 1012 (1999)
Ursula BULOT, et al.
v.
INTRACOASTAL TUBULAR SERVICES, INC., et al.
No. 98-C-2105.
Court of Appeal of Louisiana, Fourth Circuit.
February 24, 1999.
*1013 Stuart H. Smith, Michael G. Stag, Law Offices of Sacks and Smith, New Orleans, LA, for relators.
Glen M. Pile, E. Gregg Barrios, Edward M. Morris, Roland M. Vandenweghe, Jr., Adams and Reese L.L.P., New Orleans, LA, for respondents.
Court composed of Judge CHARLES R. JONES, Judge MIRIAM G. WALTZER and Judge DENNIS R. BAGNERIS, Sr.
JONES, Judge.
The Relators seek review of the trial court's judgment sustaining the Defendants' peremptory exceptions of no cause of action for exemplary or punitive damages, assault and battery and breach of contract. After reviewing the record, we hereby grant in part and reverse in part the Relator's writ application.

FACTS
This is an action filed by several Plaintiffs for injuries allegedly caused by occupational exposure to Technologically Enhanced Radioactive Material (TERM) and other hazardous, toxic and carcinogenic materials. Intracoastal Tubular Services, Inc. (ITCO), the Plaintiffs' former employer, Mobil Exploration & Producing Southeast, Inc. (Mobil), and several other corporations were named in this suit for allegedly tendering contaminated oil field equipment to ITCO for cleaning or maintenance. The Plaintiffs and/or their decedents allege that they contracted cancer or cancer-like diseases from their exposure to TERM while they were employed by ITCO. The Plaintiffs also allege that the Defendants, including the oil industry as a whole, knew about the dangers associated with handling oil field equipment containing TERM, but failed to disclose such hazards. Averring *1014 that the storing, handling and transporting of these hazardous materials were in wanton or reckless disregard of the public safety, the Plaintiffs filed five separate lawsuits alleging that they are entitled to punitive and exemplary damages pursuant to La. C.C. art. 2315.3. These lawsuits were subsequently consolidated.
The Plaintiffs in Civil Action No. 97-6178, are the surviving spouse and surviving child of Adrian Bulot, Jr. These Plaintiffs alleged that Adrian Bulot was employed by ITCO from 1960 through 1992. Mr. Bulot's duties were to clean and inspect used oilfield tubing. He was diagnosed with carcinoma of the lungs on or about December 20, 1990, and he died of carcinoma of the lung on December 5, 1992. These Plaintiffs filed suit in April 1997.
The Plaintiffs in Civil Action No. 97-10199 are the surviving spouse and the seven surviving children of Lee Craft, Sr. They allege that Lee Craft, Sr. was employed by ITCO from approximately 1952 through approximately 1985. Lee Craft, Sr.'s duties also included cleaning and inspecting used oilfield tubing. He was diagnosed with carcinoma of the lung in August 1984, and he died of carcinoma of the lung on August 12, 1986. These Plaintiffs filed suit on June 10, 1997.
The Plaintiffs in Civil Action No. 97-10223 are Kenneth Craft (one of Lee Craft, Sr.'s children) and his wife, Fanette Craft. They allege that Kenneth Craft was engaged in the cleaning and inspection of used oilfield tubing from 1973 through 1985 at the direction of his employer, ITCO. During October 1984, he was diagnosed with an inflammatory lesion of the lung, which was surgically removed. He seeks damages for cancerphobia and other losses. The Crafts' petition was filed in June of 1997.
The Plaintiffs in Civil Action No. 97-6730 are the surviving spouse and surviving children of Osimento Salmeron. They allege that Mr. Salmeron was engaged in the cleaning and inspection of used oilfield tubing at the direction of his employer ITCO from 1975 through 1989 and during that time he was exposed to TERM and other toxic materials. In July 1990, Mr. Salmeron was diagnosed with carcinoma of the brain. He died of carcinoma of the brain on September 28, 1991. The Salmeron's filed suit in April 1997.
The Plaintiffs in Civil Action No. 97-10225 are Joe Webber and his wife Ora Webber. They allege that Joe Webber, a former employee of ITCO, was engaged in the cleaning and inspection of used oilfield tubing at the direction of his employer ITCO from 1977 through 1980. While employed, he was exposed to TERM and other toxic materials. On some unspecified date Joe Webber was diagnosed with a salivary gland tumor that was surgically removed. He later learned that his work exposure to the various toxic materials was a cause and/or a substantially contributing factor in the development of his disease. He seeks damages for cancerphobia, among other things. Plaintiffs filed suit in June 1997.
The various Plaintiffs state causes of action for intentional failure to warn and inspect the oil field equipment, negligence, strict liability, absolute liability, bailor-bailee liability, breach of contract, breach of warranty, assault and battery, and negligence per se. Three of the actions are wrongful death and survival actions. An order consolidating all the aforementioned cases was signed on April 24, 1998. The Defendants filed numerous pre-trial exceptions, including a peremptory exception of prescription and exceptions of no cause of action for exemplary damages, assault and battery and breach of contract. The trial court denied the exception of prescription and granted the exceptions of no cause of action for exemplary damages, no cause of action for assault and battery, and no cause of action for contract. Plaintiffs now seek review of the ruling of the trial court that granted the exceptions.

DISCUSSION
In their first and second arguments, Plaintiffs argue that the trial court erred in dismissing their actions for exemplary damages, based on the fact that the petitions were filed after the repeal of La. C.C. art. 2315.3. Plaintiffs also argue that the trial court erred by applying La. C.C. art. 2315.3 retroactively.
*1015 This Court recently considered the issue of whether the Act repealing La. C.C. art. 2315.3 could be applied retroactively in a case involving damage to property in Joseph Grefer et al v. Alpha Technical, et al, unpub. 98-2039 (La.App. 4 Cir. 9/22/98). In reversing a judgment wherein the trial court had dismissed Plaintiffs' claim for exemplary damages under La. C.C. art. 2315.3, this Court stated:
Initially we point out that Act No. 2 of the 1st Ex.Sess. of 1996, which repealed La C.C. art. 2315.3, provides that it is applicable only to those causes of action which arise after its effective date. Thus, if the facts giving rise to Plaintiffs' cause of action occurred prior to April 16, 1996, they have a claim for exemplary damages...
Thus, for purposes of determining when La.C.C. art. 2315.3 applies, the relevant time period is the time the injury occurs. In Quick v. Murphy Oil Co., 446 So.2d 775, 780, (La.App. 4 Cir.1982), writ denied, 447 So.2d 1074 (La.1984), this Court stated:
We do distinguish, however, the time when a cause of action arises from when prescription begins to run. A cause of action arises when injury occurs, while prescription begins to run only when the injured party becomes aware of his injury.
Based on the clear wording of the statute and Quick, supra it appears that the Plaintiffs' cause of action arose prior to the repeal of La. C.C. art. 2315.3. Nevertheless, it appears that La. C.C. art. 2315.3 is not applicable to any of these consolidated cases, because all the causes of action appear to be based on substantial injury-producing events which occurred prior to 1984, the year La. C.C. art. 2315.3 was enacted.
Pursuant to the allegations contained in the petition, the majority of the Plaintiffs' exposure to TERM occurred prior to 1984. Adrian Bulot worked for the Defendant ITCO from 1960 through 1992, a total of thirty-two years. However, he only worked for ITCO for eight years from the date La. C.C. art. 2315.3 became effective.[1] The majority of his employment (twenty-four years) occurred prior to the effective date of La. C.C. art. 2315.3.
Lee Craft, Sr. worked for ITCO from 1952 through 1985, a total of thirty-three years. He only worked for ITCO for one year after the effective date of La. C.C. art. 2315.3, while he worked thirty-two years prior to the effective date of the Act. Similarly, Kenneth Craft worked for ITCO from 1973 through 1985, a total of twelve years, with only one year of employment under the Act and eleven years of employment prior to the Act. Osimento Salmeron worked for ITCO from 1975 through 1989, a total of fourteen years. Only five of his years of employment fell under the Act while nine years occurred prior to the effective date of the Act. Joe Webber worked for ITCO from 1977 to 1980. Consequently, all of his work was performed prior to the enactment of La. C.C. art. 2315.3 in 1984.
In Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), the Supreme Court considered the issue of whether Act 431 of 1979 was correctly applied in litigation filed after enactment of the legislation, for injuries which occurred prior to the enactment of the legislation.[2] In Cole, several workers sued for damages caused by long-term exposure to asbestos at their workplace. The suit was filed in December 1987. The workers alleged causes of action against several executive officers for negligently failing to provide them with a safe workplace between 1945 and 1976. After a two week trial, the jury found that several of the executive officers were negligent and damages were awarded to those workers. The trial court instructed the jury to apply comparative fault law in apportioning liability. During their deliberation, the jury returned with a verdict finding the officers 95% at fault and finding the manufacturer-Defendants to be only 5% at fault. On appeal the Third Circuit reversed, and found that pre-comparative fault law applied. The *1016 Supreme Court affirmed the judgment of the Third Circuit.
In determining whether Act 431 applied, the Supreme Court specifically declined to hinge its decision on whether the new legislation was substantive or on whether the dates on which the Plaintiffs' causes of action had already accrued. Instead, the court noted that specific language in the Act, providing for the new law, clearly demonstrated that the legislation was to be given prospective application. The court also noted the problems attendant with utilizing tort concepts of accident and injury traditionally used in cases where the accident and injury occurred before the effective date of the Act, in cases involving causes of actions arising from latent diseases. Recognizing the difficulties attendant to pinpointing when injuries were sustained in latent disease cases, such as asbestosis cases, the court concluded that in such cases "when the tortious exposures occurring before Act 431's effective date are significant and such exposures later result in the manifestation of damages, pre-Act law applies." Cole, 599 So.2d at 1066.
The Supreme Court affirmed the appellate court's decision because the substantial injury-producing exposures occurred before the effective date of the comparative fault statute. Nevertheless, we find Cole to be distinguishable from the instant case. In Cole, all of the relevant exposures occurred before 1980, the effective date of the enactment of Act 431, whereas in the instant case some of the exposure occurred after the effective date of the Act. Yet, in a companion case, Champagne v. Celotex Corp., 599 So.2d 1086 (La.1992), the Supreme Court considered the case of Plaintiffs in the same asbestos litigation who alleged that they worked in the same unsafe environment from 1945 until the year the suit was filed (i.e.1987). Notwithstanding the fact that some of the Plaintiffs' employment occurred after the enactment of Act 471, the Supreme Court held that pre-comparative fault principles applied, "for the reasons stated in Cole". Champagne v. Celotex Corp., 599 So.2d at 1088.
The Cole court did not give a precise definition of what constitutes substantial injury-producing exposures. Rather, the court concluded that when the tortious exposures occurring before the effective date of the Act are significant, and such exposures later resulted in the manifestation of damages, pre-Act law applies. In reaching this conclusion, the court relied on certain "empirical evidence." The most important evidence was that by the 1970's it was widely known that prolonged inhalation of asbestos had a high probability of causing damages. This realization brought dramatic changes.
In 1972, the National Institute of Occupational Safety and Health promulgated stringent guidelines in the area regarding the use of asbestos in the workplace, and manufacturers stopped using asbestos in their products. The court also noted that none of the parties contested the fact that the degree of exposure was less in the later years or that the damages in the case resulted from continuous exposures, caused by continuous tortious conduct. Whether this same empirical evidence exists in this case involving TERM is unknown. No reported cases on diseases caused by TERM have been located. We find that pre-comparative law applies to the cases filed by Kenneth and Fanette Craft and Joe and Ora Webber, because their substantial injury-producing exposures occurred prior to the 1984 effective date of the Act[3], just as in Cole.
Additionally, former La. C.C. art. 2315.3 is inapplicable to the survival actions filed by the surviving relatives of Lee Craft, Sr., Adrian Bulot and Osimento Salmeron because survival actions are intended to compensate a decedent's beneficiaries for injuries suffered by the decedent. Survival actions continue the decedent's own cause of action beyond his death. See Meredith v. Asbestos Corp., Ltd., 97-2593 (La.App. 4 Cir. 2/18/98), *1017 707 So.2d 1334, 1337. Thus, the Plaintiffs' claims are governed by pre-comparative fault law. Moreover, we note that prior to the enactment of La. C.C. art. 2315.3, punitive damages for cases based on injuries caused by the wanton or reckless storage, handling, or transportation of hazardous substances were not offered. Because the Plaintiffs are not entitled to damages under La. C.C. art. 2315.3, the judgment dismissing those claims must be affirmed.
However, the law concerning the applicability of Cole to wrongful death claims is unsettled. In Coates v. AC and S. Inc., 844 F.Supp. 1126 (E.D.La.1994), the court applied the rationale of Cole. The court held that pre-comparative fault law applied to a wrongful death action filed by beneficiaries of a former insulator who died of mesothelioma. The decedent contracted mesothelioma as a result of long-term exposure to asbestos prior to the effective date of that Act. The court stated, "In summary, the trigger for the applicable law is `exposure' to the injury-producing harm, whether the case is a survival action or a wrongful death action." Coates, 844 F.Supp. at 1131. Similarly, in the recent case of Johns v. U.S, 96-1058, 1998 WL 151282 (E.D.La.3/30/98) the court applied the rationale expressed in Cole to a wrongful death action. In Johns, the court noted that the Louisiana Supreme Court has not yet addressed Cole's application to a wrongful death action, but the court predicted that the Louisiana Supreme Court would extend the holding in Cole to wrongful death actions.
In Meredith v. Asbestos Corporation, Ltd. et al, 97-2593 (La.App. 4 Cir. 2/18/98), 707 So.2d 1334, this Court refused to apply the holding in Cole to a wrongful death claim. This Court, citing Holmes v. Pottharst, 438 So.2d 622 (La.App. 4 Cir.1983), writ denied, 447 So.2d 1076 (La.1984), a pre-Cole decision, reiterated its position that a wrongful death action arises at the time of death, and the law effective on the date of death applied to wrongful death actions. In Meredith, the deceased employee, Larry Meredith, was exposed to an asbestos-containing substance between 1964 and 1972 while employed by the Defendant. As a result, he contracted mesothelioma. After he died on October 10, 1995, his survivors filed both a survival action and a wrongful death action against several Defendants, including his employer and several executive officers. The Plaintiffs' exposure to asbestos occurred prior to the effective date of La. R.S. 23:1032, the exclusivity provisions of the Worker's Compensation Act. This Court held that because La. R.S. 23:1032 was in effect on the date that the Plaintiffs' cause of action for wrongful death arose, the Plaintiffs' actions had to be dismissed.
At least one other circuit, the Louisiana 5th Circuit, follows the approach taken by this Court in deciding whether Cole and/or Coates applies to wrongful death claims. Three decisions have been rendered by three different panels of that court uniformly rejecting the argument that Cole applies to wrongful death actions. In Walls v. American Optical Corp., 96-1000 (La.App. 5 Cir. 11/25/97), 703 So.2d 800, (exposure to silica dust from 1964 to 1970death in 1995 from silicosis)[4] the court recognized and then rejected Coates. See also, Gauthe v. Asbestos Corp. Ltd., 97-656 (La.App. 5 Cir. 11/25/97), 703 So.2d 763 (exposure to asbestos from 1942 to 1977death in 1996 from mesothelioma) and Young v. E.D. Bullard Co., 97-657 (La.App. 5 Cir. 11/25/97), 703 So.2d 783 (exposure to silica dust from 1967 to 1980 death in 1994 from silicosis). In rejecting the Cole argument, the Fifth Circuit cited this Court's decision in Holmes. The Fifth Circuit also relied on the Supreme Court's decision in Taylor v. Giddens, 618 So.2d 834 (La.1993), wherein the court reiterated the principle that wrongful death actions arise only upon the death of the decedent, and compensate the beneficiaries for damages suffered by them only from the moment of the death of the decedent and thereafter.
Based on this Court's holding in Meredith, the wrongful death claims of the relatives of Adrian Bulot did not arise until December 5, 1992, the date he died; the wrongful death claims of the relatives of Lee Craft, Sr. did not arise until August 12, 1986, the date he *1018 died; and the wrongful death claims of the relatives of Osimento Salmeron did not arise until September 28, 1991, the date he died. Because former La. C.C. art. 2315.3 was in effect during those times, these Plaintiffs in these wrongful death actions may claim exemplary damages pursuant to former La. C.C. art. 2315.3.
The absurdity of the different results reached in the claims filed by the injured living Plaintiffs and the surviving relatives is readily apparent. In Meredith, the concurring judges noted that it was "nonsensical" to apply different sets of laws in survival and wrongful death cases involving latent injuries caused by occupational inhalation of lung irritants depending on the date each cause of action arose. Meredith, 97-2593, p. 6, 707 So.2d at 1340. Similarly, it would appear to be even more nonsensical to apply different dates and allow survivors to seek exemplary damages while prohibiting the actual workers from seeking such damages. Yet, such a result is reached when the holdings of Holmes and Meredith are applied to wrongful death actions, while the holding of Cole is applied to survival claims and claims filed by injured workers. In Meredith, this Court invited the Supreme Court to address the issue and to consider making a distinction between a right of action and a cause of action in latent disease cases. Such an approach would probably result in a more logical result in cases involving rights to exemplary damages under La. C.C. art. 2315.3.
In essence, La. C.C. art. 2315.3 really addresses itself to the remedy available to a plaintiff. For this reason, making a distinction between the cause of action that arises because of the damages caused by a latent disease and the types of damages available to the plaintiff in a latent disease case would result in a more logical result. In light of the fact that writs have been granted in Walls, the possibility that the Supreme Court will provide additional guidance in this area does exist. Until the Supreme Court directly addresses the issue of Cole's applicability to wrongful death actions, this Court is bound by its previous holdings. Based on those holdings, the trial court erred in sustaining the Defendants' exception of no cause of action for the wrongful death claims asserted by the relatives of Lee Craft, Sr., Adrian Bulot, and Osimento Salmeron.
In the third argument, the Plaintiffs argue the trial court erred in maintaining the exception of no cause of action for assault and battery. Plaintiffs argue that the trial court erred in dismissing their allegations of assault and battery because they specifically pled that the Defendants committed intentional acts by knowingly exposing them to radiation in failing to warn of its existence. Plaintiffs rely upon two cases from other jurisdictions to support their contention that bodily contact is not needed in order for a battery to occur. The Plaintiffs contend that contact may be achieved with an object controlled by the actor. Neither case really obviates the need for some type of direct contact. In Field v. Philadelphia Electric Co., 388 Pa.Super. 400, 565 A.2d 1170 (1989), the court held that the act of venting radioactive steam which contacted the plaintiff was sufficient to satisfy the intent requirement for an actionable battery. Unlike the instant case, wherein the Defendants allegedly allowed the Plaintiffs to be exposed to dust containing the radioactive material, the Defendant in Field directly placed the radioactive steam on the plaintiff. Thus, it appears some type of contact occurred.
The holding in Hennessy v. Commonwealth Edison Co., 764 F.Supp. 495 (N.D.Ill. 1991), offers even less support for the Plaintiffs' position. In that case the plaintiff basically argued that the Defendant allowed him to be contaminated with an excess dosage of a radioactive material. The court granted the Defendant's motion for summary judgment and dismissed the action. The court stated that even assuming that the plaintiff did not consent to exposure to the excess dosage, the plaintiff failed to submit any evidence showing his employer intended to cause him to suffer the contact at issue. This holding appears to be consistent with Louisiana law.
An assault is the imminent threat of a battery. According to the petition, the Plaintiffs only recently became aware of the dangers of TERM. Consequently, at the time the various workers were handling the oilfield *1019 tubing, the workers could not have possibly been threatened with a battery. A battery is defined as a harmful or offensive contact, resulting from an act intended to cause the plaintiff to suffer such a contact. Caudle v. Betts, 512 So.2d 389, 391 (La. 1987).[5] Battery is an intentional tort. In this state, intent refers to the consequence of the act, not the act itself. Only where the actor entertains a desire to bring about the consequences that follow or where the actor believes they are substantially certain to follow, has the act been characterized as intentional. Plaintiffs fail to allege that the Defendants intended to cause the Plaintiffs to suffer a harmful or offensive contact, thus the court did not err in dismissing the Plaintiffs' claims.
Plaintiffs argue that a civil battery does not require the more exacting burden of proof and level of intent need for a criminal battery, i.e. "intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another". La. R.S. 14:33. However, Plaintiffs cite no Louisiana cases wherein allowing an employee to be exposed to noxious substances has been considered a battery. In fact, in the context of worker's compensation cases, the courts have refused to find that allowing employees to work in unsafe conditions is an intentional act.
In Armstead v. Schwegmann Giant Super Markets, Inc., 618 So.2d 1140, 1142 (La.App. 4th Cir.1993), writ denied 629 So.2d 347 (1993) this Court stated:
In order to avoid the general rule that an employee's exclusive remedy for a work-related injury is worker's compensation, plaintiff must establish that his injury was the result of an "intentional act".... "Intent" within the context of Section 23:1032 means that the Defendant either consciously desired to bring about the physical result of his act or believed it was substantially certain to follow from his conduct. Bazley v. Tortorich, 397 So.2d 475 (La.1981). "Substantially certain to follow" requires more than a reasonable probability that an injury will occur; "certain" has been defined to mean "inevitable" or "incapable of failing". Kent v. Jomac Products, Inc., 542 So.2d 99 (La.App. 1st Cir.1989). The mere knowledge of an employer that a machine is dangerous and that its use, therefore, creates a high probability that someone will eventually be injured is not sufficient to meet the "substantial certainty" requirement. King v. Schuylkill Metals Corp., 581 So.2d 300 (La.App. 1st Cir.1991), writ denied 584 So.2d 1163 (La.1991). Furthermore, even where a Defendant's conduct is grossly negligent, this fact alone will not allow the imputation of intent. Id. (emphasis added) [citations and footnote omitted]
Similarly, in Tapia v. Schwegmann Giant Supermarkets, Inc., 590 So.2d 806, at 807-8 (La.App. 4th Cir.1991), this Court stated:
Mere knowledge and appreciation of a risk does not constitute intent. Reckless or wanton conduct by an employer does not constitute intentional wrongdoing. Gross negligence, disregard of safety regulations or the use of safety equipment is not sufficient. Williams v. Gervais F. Favrot Company, Inc., 573 So.2d 533 (La. App. 4th Cir.19[91]), writ denied, 576 So.2d 49 (La.1991). Nationwide, policy considerations reflect that the employer's conduct must go beyond knowingly permitting a hazardous work condition to exist, ordering an employee to perform an extremely dangerous job, or willfully failing to furnish a safe place to work in order to constitute an intent to injure necessary under the exception. Id. at 540, quoting Larson, 2A Workman's Compensation Law, Section 68.13 (1989).
Notwithstanding the Plaintiffs' allegation that the Defendants committed intentional acts by knowingly exposing them to radiation in failing to warn of its existence, the case law does not support a finding that such acts can be considered intentional. Thus, it does not appear that the trial court erred by dismissing the claims for assault and battery.
*1020 In the fourth argument, the Plaintiffs argue that the trial court erred in maintaining the Defendants' exception of no cause of action for breach of contract. Plaintiffs argue that pursuant to La. C.C. art.1978, a third party beneficiary may receive the benefits of provisions in a contract. According to the Plaintiffs, the Defendant, Mobil, contracted with the lessors of the property to perform services that included inspection, cleaning and storage of pipe. These contracts, according to the Plaintiffs, hold Mobil responsible for any damages it caused. Because the generation of radioactive waste caused them damages, the Plaintiffs allege that their action for breach of contract "is based upon the real possibility that the Plaintiffs are third party beneficiaries to any contracts between Mobil and their former employer, ITCO."
The requirements to be met in order to establish that one is a third party beneficiary of a contract were stated by this Court in Concept Design, Inc. v. J.J. Krebs & Sons, Inc., 96-1295 (La.App. 4th Cir.3/19/97), 692 So.2d 1203, wherein this court stated:
Under Louisiana law, a contract for the benefit of a third party is referred to as a stipulation pour autri. See, e.g. Whitney National Bank v. Howard Weil Financial Corp., 93-CA-1568 (La.App. 4th Cir.1/27/94), 631 So.2d 1308, 1310 ... "In order to establish a stipulation pour autri there must be a clear expression of intent to benefit the third party. The third party relationship must form the consideration for a condition of the contract; the benefit may not be merely incidental to the contract." State, In re Adoption of S.R.P., 555 So.2d 612, 618 (La.App. 4th Cir.1989), writ denied, 556 So.2d 1288 (La.1990). A contract, in order to constitute a stipulation pour autri, must be "in writing and clearly manifest an intention to confer a benefit upon a third party". DePaul Hospital v. Mutual Life Ins. Co., 487 So.2d 143, 146 (La.App. 4th Cir.1986). (footnote omitted)
Concept Design, 96-1295, p. 5, 692 So.2d at 1205.
Plaintiffs fail to allege a contractual relationship between the Defendants, Mobil and ITCO. Further, the Plaintiffs do not allege that any written contract evidencing an intent to benefit the Plaintiffs exists. Accordingly, it does not appear that the trial court erred in dismissing the Plaintiffs' breach of contract claims.
In their fifth assignment of error, the Plaintiffs state that the trial court erred by not allowing them to amend their petitions to state causes of action for exemplary damages under La. C.C. art. 2315.3, for assault and battery, and for breach of contract. However, the Plaintiffs failed to brief this issue. Accordingly, this issue is considered abandoned. Additionally, the transcript of the motions hearing contains no evidence to support a finding that a request to amend was made by the Plaintiffs.
Accordingly, the Relators' writ application is granted in part. Further, the judgment granting the Defendants' exception of no cause of action for exemplary damages under former La. C.C. art. 2315.3 is reversed insofar as the wrongful death claims of the relatives of Adrian Bulot, Lee Craft, Sr., and Osimento Salmeron are concerned. In all other respects, the relator's writ application is denied.
WRIT GRANTED IN PART; WRIT DENIED IN PART.
NOTES
[1] The Act creating La. C.C. 2315.3 became effective on September 3, 1984.
[2] Act 431 amended and re-enacted La. C.C. arts. 2103, 2323 and 2324 to usher into Louisiana a comparative fault system. The act eliminated the doctrine of contributory negligence.
[3] Also see, Williams v. A.C. & S. Inc. et al., 700 F.Supp. 309 (M.D.La.1988) wherein a federal court judge considered the case of a plaintiff who alleged his injuries resulted from the manufacture and distribution of asbestos products. The plaintiff allegedly worked in the occupation from 1947-1973. Noting that La. C.C. art. 2315.3 was not enacted until 1984, the court stated that La. C.C. art. 2315.3 could not apply to a cause of action which arose ten years before its enactment.
[4] Writ granted, 98-0455 (La.4/24/98), 717 So.2d 1153.
[5] In Holmes v. Pottharst, 557 So.2d 1024, 1025 (La.App. 4th Cir.1990), this court suggested that Caudle should not be applied broadly to the whole range of silicosis/asbestosis cases.