IT DAVID S. GORBATY, Judge.
Relators are before this Court seeking review of a trial court judgment granting defendant/respondent Exxon Mobil’s motion for summary judgment as to the survival action filed by the Thomassie plaintiffs, a motion for summary judgment as to the wrongful death action filed by the Tho-massie plaintiffs, and an exception of no right of action as to punitive damages for the Bulot plaintiffs. For the following reasons, we grant the writ, reverse the trial court judgment as to the motion for summary judgment on the survival action of Mr. Thomassie, and affirm the trial court judgment in all other respects.
*1019 Background:
Melvin Thomassie was employed by In-tracoastal Tubular Services; Inc. (hereinafter ITCO), from 1968 to 1992'[1] and was engaged in the cleaning of oilfield tubing and pipes. He died in 1999, after being diagnosed with pancreatic cancer, allegedly as a result of exposure to radioactive waste while employed by ITCO. His survival action was not discussed in Bulot v. Intracoastal Tubular Services, Inc., 98-2105 (La.App. 4 Cir. 2/24/99), 730 So.2d 1012 (hereinafter Bulot I )(to be discussed below), because his widow and children did not file suit until after that decision was rendered. The Thomassie case was subsequently consolidated with the other cases involved in Bulot I.
| ¡Motion for Summary Judgment — Tho-massie Survival Action:
Exxon Mobil argued in its motion for summary judgment that because Melvin Thomassie’s “substantial, injury-producing exposures occurred prior to September 4, 1984, the date La. Civ.Code art. 2315.3[2] became effective, Mr. Thomassie’s widow and children have no claim for punitive damages in their survival action. Basically, ExxonMobil urged an exception of no cause of action in the form of a motion for summary judgment.
In opposition to the motion, plaintiffs submitted a case study performed by Dr. Marvin Resnikoff, et al, as well as Dr. Resnikoff s affidavit attesting that he conducted a dose reconstruction and risk analysis for Melvin Thomassie to determine if Mr. Thomassie received a significant exposure to radioactive materials between August 1984 and 1992, when he ceased to work for ITCO. Dr. Resnikoff concluded that it was “very likely that the exposure sustained by Melvin Thomassie between August 1984 and 1992, when he left work at ITCO, was a significant factor in causing his cancer.” Plaintiffs also submitted the testimony of John Hooper, whose family had owned ITCO since the 1950’s. Mr. Hooper testified that ITCO’s business increased dramatically in the 1980’s as drilling increased in the United States. Plaintiffs argued that logically, the more pipe that was stored and cleaned, the more radioactive materials were released into the work environment.
The trial court granted ExxonMobil’s -motion, stating in written reasons for judgment that the unrefuted facts established that Mr. Thomassie worked for ITCO for 26 years, ending in 1990. Applying Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), as interpreted by this Court in Bulot I, the trial court found that, based | ¡.upon the evidence and pleadings submitted, there was no genuine issue of material fact that Mr. Thomassie’s substantial, injury-producing exposures occurred prior to September 4, 1984. Thus, the court found that Mr. Thomassie’s cause of action arose prior to the effective date of La. Civ.Code art. 2315.3. The affidavit of Dr. Resnikoff attesting that Mr. Thomassie’s exposure to NORM between 1984 and 1992 was a significant factor in causing his cancer was, in the court’s opinion, unconvincing because , the dose reconstruction analysis conducted by Dr. Resnikoff indicated that Mr. Tho-massie had the same exposure level from *1020 1968 to 1989, and a reduced exposure rate from 1990 to 1992.
In Bulot I, this Court held the relatives of Lee Craft, Sr., Adrian Bulot and Osi-mento Salmerón could not maintain a cause of action for punitive damages under La. Civ.Code art. 2315.3 in a survival action because the claim of the decedent into whose shoes the relatives stepped could not recover. Bulot, 98-2105, p. 8, 730 So.2d at 1016-1017. In other words, applying the significant exposure theory set forth in Cole, supra, this Court found that decedents suffered a more significant exposure to the hazardous waste prior to enactment of La. Civ.Code art. 2315.3, and thus could not maintain a cause of action for punitive damages. Ergo, the relatives of the decedent could not maintain a cause of action for punitive damages.
Since rendition of this Court’s opinion in Bulot I, the Supreme Court has revisited the issue of when a cause of action arises in a long-latency occupational disease case. We find, based upon the Supreme Court’s more recent decision in Austin v. Abney Mills, Inc., 01-1598 (La.9/4/02), 824 So.2d 1137, that the Bulot I court misapplied the significant exposure theory set forth by the Supreme Court in Cole, supra, as it applies to maintaining causes of action in long-latency | ¿occupational disease cases. See also Bulot v. Intracoastal Tubular Services, Inc., 00-2161 (La.2/9/01), 778 So.2d 583.[3]
Austin, supra, was a workers compensation case; however, the Court was reviewing a summary judgment granted in favor of plaintiffs employer, in which the employer argued that the plaintiff could not maintain a cause of action against his employers and unnamed executive officers because his cause of action arose during a time period when employers were entitled to immunity from tort suits by employees. Plaintiff suffered from mesothelioma, a long-latency asbestos-related disease. In Austin, the Supreme Court expressly stated that the Court adopted the significant exposure theory articulated in Cole, supra, for a cause of action under La. Civ.Code 2315 in a long-latency occupational disease case in which the plaintiff suffers from the disease. Austin, 2001-1598, p. 1, 824 So.2d at 1140. In adopting the Cole rationale, the Court concluded:
... the “significant tortious exposure” theory for determining when a cause of action accrued in a long-latency occupational disease case in which the plaintiff suffers from an illness or disease is when the exposures later result in the manifestation of damages. Just as the appellate court reasoned in Abadie [v. Metropolitan Life Ins. Co., 00-344 (La. App. 5 Cir. 2/28/02), 894 So.2d 46], we hold that “tortious exposures are significant when asbestos dust has so damaged the body that the fibrogenic effects of its inhalation will progress independently of further exposure.” We agree with the Abadie court that such an application' of the “significant tortious exposure” theory is a logical variation of, and not materially different from, the application of the “contraction” theory articulated in *1021 Faciane [v. Southern Shipbuilding Corp., 446 So.2d 770 (La.App. 4th Cir. 1984)]. Therefore, in order to establish when a tort cause of action accrued in a long-latency occupational disease case, wherein the plaintiff suffers from the disease, the plaintiff must present evidence that the exposures were “significant and such exposures later resulted] in the manifestation of damages ...”
Austin, 01-1598, pp. 25-26, 824 So.2d at 1154 [citations omitted]. It is clear that the holding in Austin should be applied in all cases involving long-latency diseases to determine whether a cause of action can be maintained.
Appellate review of a motion for summary judgment is de novo. Schroeder v. Bd. of Sup’r of La. State. Univ., 591 So.2d 342 (La.1991). A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. Proc. art. 966(B). La.Code Civ. Proc. art. 966(C)(2) states the burden of proof in summary judgment proceedings, providing:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Applying the significant tortious exposure test as recently explained in Austin, supra, we find there exist genuine issues of material fact as to whether Mr. Thomassie’s exposures to radioactive material on the jobsite from 1984 to 1992 resulted in his developing cancer. Plaintiffs submitted sufficient evidence to rebut ExxonMobil’s position, and to establish the existence of genuine issues of material fact. ExxonMobil, on the other hand, submitted no evidence to indicate that Mr. Thomassie was not exposed to radioactive material from 1984 to 1992, or that exposures to radioactive materials after 1984 were less than those prior to 1984. As the Supreme Court explained in Cole, requisite exposures for giving rise to a | ficlaim in a long-latency occupational disease case must be “significant [and] continuous”. Cole, supra, 599 So.2d at 1066. The trial court in its reasons for judgment recognized that Dr. Resnikoffs reconstruction analysis “assigns Mr. Thomassie the same NORM exposure rate for each year from 1968 to 1989.” Clearly, if his exposure was significant in 1968, it was of the same significance for each subsequent year, including the effective dates of La. Civ.Code art. 2315.3. We therefore hold that plaintiffs can maintain a cause of action for punitive damages pursuant to La. Civ. Code art. 2315.3 in the survival action, and reverse the trial court’s summary judgment in favor of ExxonMobil.
Motion for Summary Judgment — Tho-massie Wrongful Death Action:
The plaintiffs/decedents involved in Bulot I each died while La. Civ.Code art. 2315.3 was in effect. Mr. Thomassie did not die until 1999. Article 2315.3 was repealed effective April 16, 1996. The law in effect at the time of death is the law *1022 that applies in wrongful death actions. Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262. As such, the Thomassie plaintiffs cannot maintain a cause of action for punitive damages in connection with their wrongful death claim. Accordingly, we affirm the summary judgment granted in favor of Exxon-Mobil on this issue.
Exception of No Right of Action — Bulot Wrongful Death Actions:
ExxonMobil also filed an Exception of No Right of Action as to the Bulot plaintiffs, the widow and children of Adrian Bulot, as to their wrongful death case. ExxonMobil argued that plaintiffs proceeding in a wrongful death case have no right of action to claim damages pursuant to La. Civ.Code art. 2315.3.
In Bulot I, this Court held that the plaintiffs in a wrongful death case could maintain a cause of action under art. 2315.3 if the decedent died while the law was in effect, i.e., between September 4, 1984, and April 16, 1996. Because the cases [7addressed in Bulot I each involved decedents who died while art. 2315.3 was in effect, the plaintiffs could maintain a cause of action pursuant to art. 2315.3 in their wrongful death cases.
In Taylor v. Giddens, 618 So.2d 834 (La.1993), the Louisiana Supreme Court distinguished the wrongful death and survival actions:
Although both actions arise from a common tort, survival and wrongful death actions are separate and distinct. Each right arises at a different time and addresses itself to the recovery of damages for totally different injuries and losses. The survival action comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim’s death and permits recovery only for the damages suffered by the victim from the time of injury to the moment of death. It is in the nature of a succession right. On the other hand, the wrongful 'death action does not arise until the victim dies and it compensates the beneficiaries for their own injuries which they suffer from the moment of the victim’s’ death and thereafter. Wrongful death damages compensate beneficiaries for their own injuries.
Id. at 840 (internal citations omitted)(emphasis supplied).
Following Bulot I, the Louisiana Supreme Court decided Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262, where it considered the statutory amendment granting immunity to executive officers applied to wrongful death claims filed after the effective date of the amendment. On the basis of Taylor, supra, the Court found that the law in effect at the time of death is the law that applies to a wrongful death action. On remand from the Supreme Court, this Court determined that its decision in Bulot I maintaining the survivors’ wrongful death claims was in accord with Walls. Nevertheless, the issue of a survivor’s right of action to assert a punitive damage claim as a component of a wrongful death claim- remained unresolved.
In urging its Exception of No Right of Action, ExxonMobil has essentially grasped the pearl left uncollected following Bulot I. The trial court granted ExxonMo-bil’s exception principally on the basis that only the person injured by | Rthe hazardous or toxic substances can recover punitive damages and that by application, La. Civ. Code art. 2315.2, which limits a survivor’s benefits to damages he actually suffered as a result of the decedent’s death, cannot serve as a vehicle to recover punitive damages. This ruling is also consistent with the Supreme Court’s holding in Taylor, *1023 swpra. The trial court also noted that there could not be two punitive damage awards in a single case involving a single tort victim — the practical result of attaching punitive damages to both a survival action and a wrongful death action.
The trial court was correct in finding that punitive damages could not be recovered by way of a wrongful death action. As the Supreme Court explained in Billiot v. B.P. Oil Co., 93-1118 (La.9/29/94), 645 So.2d 604, 606 (La.1994), “the right to a punitive award is a different kind of right or legally enforceable claim than the right to compensatory damages.” As such, a claim for damages pursuant to La. Civ. Code art. 2315.3 cannot exist as a component of a wrongful death action, as that is limited to compensatory damages for the survivor’s [victim’s] own injuries. This is also in accord with the clear language of the article, “... punitive damages may be awarded, if it is proved that the plaintiffs injuries, were caused by the defendant’s ... disregard for public safety ...” (emphasis added). La. Civ.Code art. 2315.1 provides for the survivors of the original tort victim to recover “all damages for injury to that person, his property or otherwise, caused by the offense ...” (emphasis added).
Accordingly, we find no error by the trial court in granting ExxonMobil’s Exception of No Right of Action as to the Bulot plaintiffs in the survival action.
WRIT GRANTED; RELIEF GRANTED IN PART, DENIED IN PART.

. There is a discrepancy in the record as to whether Mr. Thomassie worked until 1990 or 1992. The discrepancy is not relative to a resolution of this issue.

. Article 2315.3, in effect between 1984 and 1996, provided that "in addition to general and special damages, punitive damages may be awarded, if it is proved that the plaintiff’s injuries were caused by the defendant’s wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous dr toxic substances.”

. In this case, the Supreme Court originally granted certiorari to address whether application of La. Civ.Code art. 2315.3 to conduct arising after its effective date would be an improper application of the article under Walls v. American Optical Corp., 98-0455 (La. 9/8/99), 740 So.2d 1262. In recalling the order granting certiorari, the Court noted that because plaintiffs had alleged their damages resulted from post-1984 exposure, the retro-activity of art. 2315.3 was not implicated. The Court observed that once plaintiffs pled a cause of action for punitive damages arising from post-1984 conduct, the well-pleaded allegations must be accepted as true, and the exception of no cause of action could not stand.