261 So.2d 717 (1971)
James H. STURCKE
v.
Bessie S. CLARK, The Hanover Insurance Company.
No. 4461.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 1971.
On Rehearing April 18, 1972.
Rehearings Denied May 16, 1972.
Writs Refused June 22, 1972.
*718 Bienvenu & Culver, Hugh M. Glenn, Jr., New Orleans, for defendant-appellee and third-party plaintiff-appellant.
Lawrence A. Wheeler, New Orleans, for defendants-appellees.
Donahue & Willmott, Richard M. Donahue, Metairie, and Peter J. Vernaci, New Orleans, for plaintiff-appellant.
Before CHASEZ, REDMANN and LEMMON, JJ.
REDMANN, Judge.
Plaintiff appeals from the dismissal on the merits of his suit for automobile collision damages against another driver and her husband and plaintiff's uninsured motorist insurer. The last defendant protectively appeals from the dismissal of its third-party claim against the first two defendants and the insurance agency allegedly responsible for their not in fact having been issued a policy of insurance.
The principal issue is the basically factual one of plaintiff's negligence. Because we affirm on that issue we discuss no others.
The accident occurred one block after plaintiff had turned off Earhart Blvd. in New Orleans, heading uptown on South Claiborne Avenue. Defendant was crossing from his left on Clio Street. On the Claiborne neutral ground are overpass understructures which, plaintiff agrees, do not significantly block vision from a car on Claiborne of an automobile on Clio in the neutral ground area. A trailer-truck stopped in plaintiff's right lane with left turn indicator blinking attracted attention of both drivers; hand motioning by him was apparently interpreted by each as an indication to continue across the intersection.
Plaintiff's was the favored street. This fact lends support to plaintiff's position and establishes defendant's primary negligence. But plaintiff's own testimony is that he never saw defendant driver until he struck the right rear side of her station wagon. She was driving slowly (as was he); her car stopped near the far curb of the intersection, a few feet from impact (and his stopped near impact). Physical damage was not severe, confirming the moderate speeds involved.
Plaintiff has sympathy for his position that his failure to see cannot by itself make itself a cause of the accident. Failure to see what one should see may be negligence, but its only immediate result is that one must be treated as if had seen. The test for causation remains whether the seeing driver could have reacted and stopped in time to avoid the accident. Had plaintiff then been travelling at the lawful speed of 35 mph, he could not have stopped if he had seen defendant, and thus failure to see would not have caused the collision.
The circumstances, however, of plaintiff's slow speed, increasing from a speed of five to ten mph as he passed the truck, and of defendant's slow speed suggest that, as was apparently the trial judge's view, plaintiff could have stopped in the time it took defendant to move her car almost entirely past plaintiff's lane of travel.
Plaintiff's failure to see defendant was negligence, at least from the moment at which he should reasonably have determined he could safely pass the truck and thus should have returned his attention to the general roadway ahead of him. That determination should reasonably have been made when plaintiff was towards the rear of the truck, i. e., before he placed himself in too adjacent a position to avoid injury should the truck begin the left turn its lights were signalling. Perhaps prior to that reasonable determination it could be said the reasonable man's attention would be concentrated almost exclusively on the truck, and his failure to see a car in defendant's *719 position might have been an excusable or inculpable failure, a "very slight fault * * * for which no responsibility is incurred", C.C. art. 3556 subd. 13. But the truck circumstances cannot excuse plaintiff's failure after that determination. It is perhaps a close question, but we are unwilling to reverse the trial judge's determination merely because the evidence, although supportive, does not conclusively establish contributory negligence. A reasonable preponderance suffices, and we believe the slow speeds reasonably show that plaintiff still had time to stop when he was alongside the truck's trailer, and at that point we believe his failure to return his attention to the roadway was negligence which did contribute to the accident. See Suhre v. National Union Indem. Co. of Pa., 244 La. 455, 152 So.2d 558 (1963); see also discussion in Martin v. Moore, 210 So.2d 607 (La.App.1968).
The judgment is affirmed.
LEMMON, Judge (dissenting).
This case presents the following legal issuewhat is the duty of a motorist traveling on a favored street in the left lane, confronted with a large truck and trailer which is stopped in the lane to his right and signaling for a left turn, when another motorist illegally enters his path of travel from an unfavored street (especially when his view to the left is partially obstructed by the overpass understructure)?
The trial court observed:
"The Court is bound to arrive at this opinion in this particular case, that both of these parties were watching this particular truck, and that, under the circumstances of this particular case, even though the plaintiff in this case had the right-of-way street, if he had been alert and if he had been looking and had seen what he should have seen he was bound to see this defendant's automobile, which was bright red, which passed all the way in front of him. He hit the rear end of it, and he says he did not see that car at all. He had slowed because of the peculiar condition there. His attention undoubtedly was directed at the truck driver, as was the defendant's in the Court's opinion, they were both looking at it, but I think that the plaintiff in this case owed a further duty, and that was to see that it was clear for him to pass. If he didn't see this car at all, he is bound to be contributorily negligent, and I must dismiss his suit, and that's it."
The law imposes upon a motorist the duty of proper lookout. If the motorist breaches this duty, the legal consequence is only that he is charged with seeing what he should have seen had he kept a proper lookout. The motorist has still not committed actionable negligence unless his failure of lookout directly causes an accident.
In this case the plaintiff testified that he did not see the non-yielding defendant until he hit her. But the interval between the time that the defendant illegally entered the intersection and the time that the impact occurred was so brief that even if the plaintiff had maintained perfect lookout, he could not have stopped in time to avoid the accident.
It is important to note that the defendant, having failed to yield the right of way, was illegally in the position that she occupied when plaintiff should have first seen her, i. e., when she entered the intersection from his left. The front of defendant's vehicle then traveled approximately 20 feet (by my estimation) from the point of entering the intersection to the point of impact, which at 10 miles per hour would take less than 1½ seconds.
In my opinion plaintiff, after he should have seen the defendant, did not have sufficient time within which to stop or otherwise avoid the accident and therefore should not be held contributorily negligent.

*720 ON REHEARING
REDMANN, Judge.
We granted rehearing here because of the question whether he had placed too high a standard of care on the plaintiff driver on a favored street. We now conclude that we did.
Although it may have been theoretically possible (judging from speed and distance estimates) for plaintiff to have seen defendant driver in time to avoid the collision, requiring him to have seen her soon enough to stop would, in our opinion, charge him with negligence for being cautious of the truck for perhaps a second or so too long. This exacts a duty of very high care towards the unfavored motorist, and the law requires only the slightest care on the part of the favored motorist.
In Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964), our supreme court reversed judgments holding the favored driver negligent in making a left turn on a green arrow when he had previously seen defendant driver approaching at a relatively high speed and did not look at the approaching car again after he started his turn. After reciting the established rule that a motorist travelling on a favored street is entitled to assume that drivers on the less favored street will obey the law and respect his right of way, the court adds, 161 So.2d at 753,
"* * * Indeed, it is now well settled that it is only in exceptional circumstances, where the motorist on the favored street could have avoided the accident by the exercise of the slightest sort of observation and care, that he will be found derelict. See Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Ryan v. Allstate Insurance Company, 232 La. 831, 95 So.2d 328; Steele for Use and Benefit of Steele v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222; Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339; Youngblood v. Robison, 239 La. 338, 118 So.2d 431 and Bryant v. Ouachita Coca-Cola Bottling Company, 239 La. 83, 117 So.2d 919." (Emphasis added.)
We erred in holding that plaintiff should have seen defendant driver in time to avoid the accident under the circumstances here involved. This placed on him a duty toward defendant driver far beyond the slightest care which alone the law requires, and charged him with anticipation and almost split-second observation of defendant driver's failure to obey the law and to respect his right of way.
We conclude the accident was caused solely by defendant driver's negligence.
Accordingly plaintiff is entitled to recover his damages from defendant driver and her husband, for whom she was on the community mission of driving their child to school.
Plaintiff's uninsured motorist insurer, Hanover, will also be cast within policy limits since the individual defendants, the Clarks, were in fact uninsured, although they had paid the premium for insurance. And Hanover is entitled to judgment over on its third-party demand against the Clarks.
The secretary-treasurer of third-party defendant Carver General Insurance Agency, Inc. admitted the Clarks had paid Carver the premium for both collision and $5,000/$10,000/$5,000 liability insurance. He testified that through clerical oversight the collision policy was issued but the liability policy was not. Had the liability policy been issued, it would have protected the Clarks for their legal liability to plaintiff for the damages he incurred in this accident. The liability policy would have been a contract for the benefit of injured third parties, as a matter of law, R.S. 22:655. In our opinion an obligation to provide a contract for the benefit of a third party is itself an obligation for the benefit of a third party. Accordingly, Carver's breach of its obligation to provide a contract for the *721 benefit of third parties gave rise to an action for damages due to the breach not only by the obligee, but also by the third-party beneficiary. Although Carver did not become an insurer liable to direct action under R.S. 22:655, it did undertake an obligation for the benefit of third parties like plaintiff, C.C. art. 1890, and plaintiff therefore had a right of action to which plaintiff's uninsured motorist insurer is contractually subrogated. Carver will accordingly also be cast on Hanover's third-party demand.[1]
Plaintiff experienced discomfort manifested by muscle spasm at 15° neck flexion and 30° extension. He also had a mild temporary deficit in left hand grasping power. His physician opined the trauma had caused an acute episode of aggravation of a mild cervical arthritis. A rib belt was prescribed because of pain in breathing ascribed to soreness of anterior chest muscles because of striking the steering wheel. Almost three weeks after the accident head halter traction was ordered because some neck muscle spasm was still present. He was under treatment a total of three months, although after the first month his injury was categorized as mild and improving. He missed two weeks of work as an assistant foreman in an automobile repair shop. We believe $1,750 would be appropriate as general damages.
Medical expenses were $375.75 and lost wages $250.
The insurer is entitled to $353.75 credit for payments already made.
Expert fee to plaintiff's physician is fixed in the usual amount of $100.
Our prior opinion and decree are recalled, and the judgment appealed from is reversed and there is now judgment in favor of plaintiff James H. Sturcke and against defendants Mrs. Bessie S. Clark and her husband Dan Clark, Jr. and The Hanover Insurance Company in solido for $2,375.75, against which a reduction of $353.75 attributable to Hanover's payment is recognized, together with legal interest from judicial demand and all costs, including $100 expert witness fee; and there is judgment in favor of Hanover against the Clarks and Carver General Insurance Agency, Inc. in solido for $353.75 plus legal interest from judicial demand and costs and for all other amounts Hanover may pay plaintiff as a result of the solidary judgment against Hanover herein rendered, and as to all amounts paid to plaintiff by Hanover its contractual preference over plaintiff in any recovery from the Clarks is recognized as prayed.
NOTES
[1] We here note that Carver, after answering in the district court, made no further appearance at trial nor on appeal, and also did not appear at the argument on rehearing. It is possible that Carver's counsel was not notified of the fixing of the rehearing, although the prior disinterest suggests no appearance would have been made anyway. In any event, Carver's right to now apply for rehearing is preserved by Uniform Rules of the Court of Appeal, Rule XII § 5.