CHARLES R. JONES, Judge.
 

 hThe relator seeks review of the judgment of the district court sustaining the peremptory exception of no right of action filed by Continental Insurance Company. The writ application of the relator is granted in part and denied in part.
 

 Mr. Dudley Marchand (Mr. Marchand) was employed at Pendleton Shipyards (Pendleton) from approximately 1943 to 1945. While employed at Pendelton, Mr.
 
 *357
 
 Marchand was allegedly exposed to asbestos. This asbestos exposure resulted in Mr. Marchand’s contraction of mesothelio-ma and subsequent death. Thus, on August 12, 2009, Collen Marchand (Dudley Marchand’s wife, Mrs. Marchand), Bonnie A. Marchand, Patricia Marchand Picou, Dudley L. Marchand, III, Wayne M. Mar-chand, Rebecca Marchand Kennedy, Char-main Marchand Bizette, and Brett L. Marchand (Mr. Marchand’s children, collectively the Marchands) filed a lawsuit against multiple defendants including Pen-dleton’s executive officers and Continental Insurance Company (Continental) as the successor by merger to Fidelity and Casualty Company of New York (Fidelity), in its capacity as the general liability carrier of Pendleton.
 

 |2On January 14, 2010, the Marchands amended their original petition for damages, and on February 1, 2010, Continental filed a peremptory exception of no right of action based on corporate dissolution. In its petition, Continental argues that the Marchands did not have a right of action against it because all potential claims against Pendleton were extinguished when the Secretary of State granted Pendleton’s certificate of dissolution in 1951. Continental also argues that the Marchands do not have a right to proceed under the Direct Action Statute. Continental further argued that the Marchands must have a substantive cause of action against the insured in order to argue a procedural right of action against the insurer under the Direct Action Statute. Continental explained that Pendleton’s dissolution provided it with an absolute immunity from liability and noted that immunity is a defense available for its use as Pendleton’s insurer. Thus, Continental argued that the Mar-chands have no right of action against Continental. The final argument advanced by Continental in its exception is that our decision in
 
 Hoerner v. Anco Insulations, Inc.,
 
 2000-2333 (La.App.4 Cir.1/23/02), is not applicable. Continental speculated that the Marchands would rely on the
 
 Hoerner
 
 case to support its position that they can proceed against the insurer of a dissolved corporation. However, Continental argued, the
 
 Hoerner
 
 case is factually distinct from the facts of this case and is not applicable.
 

 On April 15, 2010, the Marchands filed an opposition to Continental’s peremptory exception of no right of action. In their opposition the Marchands argued that the Direct Action Statute provides plaintiffs with a right of action against Continental because Mr. Marchand was exposed to asbestos prior to the 1989 amendment to the Direct Action Statute. The Marchands point out that the Direct Action Statute allows a party (the Marchands) to sue the insurer | ^(Continental) directly when: (a) Continental’s insured (Pendelton) is insolvent; (b) Continental’s insured (Pendelton) is dead; and (c) when the insured (Pendle-ton) cannot be served. The Marchands’ opposition points out that Pendleton’s dissolution precluded plaintiffs from exercising their right of action against Pendleton, but did not extinguish their cause of action against Pendleton. The Marchands also noted that Louisiana law allows suit against any of the remaining assets of a dissolved corporation.
 

 After a hearing was held, and the Court having considered the pleadings, memo-randa, arguments of counsel, and the law, the district court rendered a judgment which sustained the peremptory exception of no right of action on behalf of Continental, based on corporate dissolution. The district court also sustained the peremptory exception of no right of action regarding the wrongful death claims and granted plaintiffs thirty days to amend their petition. The district court withdrew the peremptory exception of no right of direct
 
 *358
 
 action regarding the alleged executive officers of Pendleton Shipyards Company, Inc. after Continental advised the court that the exception had been withdrawn. This timely writ application followed.
 

 DISCUSSION
 

 In Louisiana, the determination of whether a plaintiff has a right of action is a question of law.
 
 Acorn Community Land Association of Louisiana, Inc. v. Zeno,
 
 2005-1489 (La.App. 4 Cir. 6/21/06), 936 So.2d 836. Appellate courts review questions of law to simply determine whether the district court was legally correct or incorrect.
 
 Id.
 
 The essential function of an exception of no right of action is to test whether the plaintiff has a real and actual interest in the action.
 
 Wirthman-Tag Construction Company, L.L.C. v. Hotard,
 
 2000-2298 (La.App. 4 Cir 12/19/01), L804 So.2d 856. Its purpose is to determine whether the plaintiff belongs to the class of persons to whom the law grants a cause of action asserted in a lawsuit.
 
 Id;
 
 La. C.C.P. art. 931. The exception assumes that the petition states a valid cause of action and questions whether the plaintiff in a particular case has a legal interest in the subject matter of the litigation.
 
 Id.;
 
 La. C.C.P. art. 931. The exception relates solely to the plaintiff and cannot be used to determine whether a defendant can stand in judgment. It can not be used to urge that plaintiff has no right of action because there is a valid defense.
 
 Id.
 

 The Marchands argue that the district court erred when it sustained Continental’s peremptory exception of no right of action based on corporate dissolution. The Mar-chands argue that the Direct Action Statute (La. R.S. 22:1269) allows them to sue Continental directly regardless of the status of Pendleton Shipyards. The Mar-chands point out that: (a) the Direct Action statute was amended in 1988; (b) the amendments became effective on January 1, 1989; and (c) the amendments only apply to causes of action accruing on or after January 1, 1989. The Marchands argue that Mr. Marchand was exposed to asbestos prior to the 1989 amendment and that their cause of action accrued prior to the amendment. Thus, they argue that they have a right to file a direct action against Continental
 

 The Marchands correctly point out that the Direct Action Statute was amended by Acts 1989, No. 117, § 2. In fact, prior to the amendments, a plaintiff could bring suit against the insurer alone without qualification.
 
 See Foltmer v. James,
 
 2001-1510 (La.App. 4 Cir. 9/12/01) 799 So.2d 545. The Marchands also correctly point out that the historical and statutory notes related to section 2 of Acts 1988, No. 934 provide: “[t]his Act shall become effective on January 1, 1989, and apply to causes of action accruing on or after that date.” La. R.S. 22:1269.
 

 IF,However, before a determination can be made regarding whether the district court erred when it sustained Continental’s peremptory exception based on corporate dissolution, the question regarding whether the Marchands’ cause of action accrued prior to January 1989 must be resolved. In
 
 Cole v. Celotex Corp.,
 
 599 So.2d 1058 (La.1992), the Supreme Court established a “significant exposure” test to determine when a cause of action accrues in a long-latency disease case. The Court noted:
 

 The uniqueness of asbestosis cases and the difficulties of trying to fit such cases within the framework of concepts designed to handle traditional torts has been recognized: “ ‘the factual predicate giving rise to potential liability from asbestos exposure is simply different from those that generated most tort doctrines ... [and thus such cases differ] in legal
 
 *359
 
 ly important aspects from those types of injuries that present tort doctrines were designed to accommodate.’ ”
 
 Ducre v. Mine Safety Appliances,
 
 573 F.Supp. 388, 391 n. 1 (E.D.La.1983), aff'd in part and rev’d in part, 752 F.2d 976 (5th Cir.),
 
 reh’g denied, en banc,
 
 758 F.2d 651 (5th Cir.1985) (quoting
 
 Thompson v. Johns-Manville Sales Corp.,
 
 714 F.2d 581, 583-84 (5th Cir.1983),
 
 cert. denied,
 
 465 U.S. 1102, 104 S.Ct. 1598, 80 L.Ed.2d 129 (1984) and noting that “[o]c-cupational diseases of the kind at hand are particularly difficult to classify pragmatically within the structured concepts of traditional tort law”).
 

 The difficulties in asbestosis cases arise because, unlike in traditional personal injury cases in which the damage results from a single, identifiable act causing traumatic injury, in asbestosis cases the damage results from a continuous process-a slow development of this hidden disease over the years.
 
 See R.J. Reynolds Tobacco Co. v. Hudson,
 
 314 F.2d 776 (5th Cir.1963). Compounding the problem, asbestosis cases are characterized by a lengthy latency period-typically ranging a decade or two-and, consequently, a lengthy temporal separation between the tortious conduct and the appearance of injury.
 
 See
 
 Comment,
 
 Liability Insurance For Insidious Disease: Who Picks Up the Tab?,
 
 48
 
 Fordham L.Rev.
 
 657, 665 n. 46 (1980). This lengthy latency period renders efforts to pinpoint the date on which the disease was contracted virtually impossible, medically and legally.
 
 Porter v. American Optical Corp.,
 
 641 F.2d 1128, 1133 (5th Cir.),
 
 cert. denied,
 
 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981),
 
 reh’g denied,
 
 455 U.S. 1009, 102 S.Ct. 1649, 71 L.Ed.2d 878 (1982); Classen,
 
 An Investigation into the Statute of Limitations and Product Identification in Asbestos Litigation,
 
 30
 
 How.L.J.
 
 1, 4 (1987). Further, this inability to pinpoint when injuries were sustained in asbestosis cases renders determining the date on which a plaintiffs cause of action accrued a herculean task.
 

 ⅜ ⅜ ⅜ ⅜ ⅝ ⅝
 

 We conclude that the key relevant events giving rise to a claim in long-latency occupational disease cases are the repeated tortious exposures resulting in continuous, on-going damages, although the disease may not be considered contracted or manifested until later.
 

 Cole,
 
 599 So.2d at 1065.
 

 The facts herein indicate that Mr. Mar-chand was significantly exposed to asbestos-containing' products when he worked at Pendleton from 1943 to 1945. The Mar-chands’ survival cause of action accrued in 1943-1945. Utilizing the
 
 Hoemer
 

 [1]
 

 rationale, it is reasonable to conclude that the Marchands’ survival cause of action accrued prior to 1989. Thus, the Marchands’ argument that the district court erred when it sustained Continental’s peremptory exception of no right of action based on corporate dissolution for their survival cause of action has merit.
 

 Next, the question as to when the Marchands’ wrongful death cause of action accrued must also be resolved. In
 
 Holmes v. Pottharst,
 
 438 So.2d 622 (La.App. 4 Cir.1983), this court noted:
 

 The wrongful death action in C.C. Art. 2315 gives beneficiaries the right to recover from the tortfeasor such damages as the beneficiaries have suffered as a result of the victim’s wrongful death. Obviously, the action cannot arise until the victim dies and is intended to com
 
 *360
 
 pensate the beneficiaries for damages they suffer from the moment of death and thereafter.
 

 _JjId,.,
 
 438 So.2d at 624.
 

 The petition in this case indicates that Mr. Marchand died on January 16, 2009; thus, the Marchands’ cause of action with regard to the wrongful death cause of action accrued on January 16, 2009. Because the amendments to the Direct Action Statute apply to causes of action accruing after 1989, the amendments are applicable to the Marchands’ wrongful death cause of action. Thus, the Mar-chands’ argument that the district court erred when it sustained Continental’s peremptory exception of no right of action based on corporate dissolution for their survival cause of action has merit.
 

 In the instant writ application, the Marchands also argue that they meet the procedural requirements of the amended Direct Action Statute. They point out that the Direct Action Statute allows: (a) suits directly against the insurance company when the insured is insolvent; (b) suits against the insurance company when the insured is dead; and (c) suits against the insurance company when the insured cannot be served.
 

 As previously noted, the Direct Action Statute was amended in 1989 and in 1992. Prior to those amendments, a plaintiff could bring a suit against the insurer alone without qualification. Under the current version of the statute, suit may be brought against the insurer alone only in six circumstances enumerated by the statute.
 
 See Foltmer v. James,
 
 2001-1510, p. 2 (La.App. 4 Cir. 9/12/01), 799 So.2d 545, 547;
 
 Etienne v. National Automobile Insurance Co.,
 
 98-1946, p. 5 (La.App. 3 Cir. 6/23/99), 747 So.2d 593, 596.
 

 La. R.S. 22:1269 provides in pertinent part:
 

 B. 1. The injured person or his or her survivors or | Sheirs mentioned in Subsection A, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Code of Civil Procedure Art. 42 only. However, such action may be brought against the insurer alone only when:
 

 (a) The insured has been adjudged a bankrupt by a court of competent jurisdiction or when proceedings to adjudge an insured a bankrupt have been commenced before a court of competent jurisdiction;
 

 (b) The insured is insolvent;
 

 (c) Service of citation or other process cannot be made on the insured;
 

 (d) When the cause of action is for damages as a result of an offense or quasi-offense between children and their parents or between married persons;
 

 (e) When the insurer is an uninsured motorist carrier; or
 

 (f) The insured is deceased.
 

 2. This right of direct action shall exist whether or not the policy of insurance sued upon was written or delivered in the state of Louisiana and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the state of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if such provisions
 
 *361
 
 are not in violation of the laws of this state.
 

 19The Marchands first argument is that a direct action may be brought against Continental pursuant to La. R.S. 22:1269(B)(l)(b), because Pendleton is insolvent, citing an unpublished opinion of this Court, which we will not reference.
 

 In the instant case, the record reflects that Pendleton was dissolved in 1951. Nothing in the record indicates that the dissolution did not occur; thus, Pendelton is an insolvent corporation and La. R.S. 22:1269(B)(1)(b) is applicable.
 

 The Marchands also argue that a direct action may be brought against Continental pursuant to La. R.S. 22:1269(B)(l)(f), because Pendleton is a deceased corporation. They cite
 
 Owens v. Allied Underwiters,
 
 207 La. 437, 21 So.2d 490 (1945) to support their position. In
 
 Owens,
 
 the administrator of an estate filed a lawsuit against a dissolved Texas insurance company to enforce a judgment that had been obtained against the company in federal court. Exceptions of no right of action and no cause of action were filed, ánd the trial court dismissed the suit. Plaintiffs appealed and the Supreme Court affirmed the lower court. In its decision, the Supreme Court noted:
 

 At the time this suit was brought, the corporation had no legal existence. Such being the case, this suit could not be successfully instituted against a non-existing corporation, and no action could be thereafter maintained against it. The dissolution of the corporation, under the insurance laws of Texas at the domicile of the corporation in that state, brought about the civil death of the corporation, and it no longer had the capacity to be sued.
 

 Owens,
 
 21 So.2d at 491. The Court further noted:
 

 There is no specific provision in our rules for the substitution as a party litigant of a successor to a dissolved corporation. It is well settled that at common law and in the federal jurisdiction a corporation which has been dissolved is as if it did not exist, and the result of the dissolution cannot be distinguished from the death of a natural person in its effect.
 

 I * * * Jifi
 

 It follows, therefore, that as the death of the natural person abates all pending litigation to which such a person is a party, dissolution of a corporation at common law abates all litigation in which the corporation is appearing either as plaintiff or defendant.
 

 Id.,
 
 21 So.2d at 444.
 

 In light of
 
 Otvens,
 
 it is reasonable to conclude that the dissolution of Pendleton “brought about the civil death” of Pendle-ton. Because of this, subsection (f) of the Direct Action Statute is applicable, and the Marchands have a direct action against Continental as the insurer of Pendleton.
 

 The Marchands’ next argument is that a direct action may be brought against Continental pursuant to La. R.S. 22:1269(B)(l)(e), because service of citation or other process cannot be made on Pen-dleton. As previously noted, Pendleton was dissolved in 1951. Because the corporation no longer exists it could not be served. Accordingly, the Direct Action Statute is also applicable in this scenario.
 

 The Marchands also argue that the district court erred by finding that Pendle-ton’s dissolution provided a preemptive bar to their claims against Continental. The Marchands point out that La. R.S. 12:173 specifically provides that the preemptive bar of La. R.S. 12:147(D) does not apply to acts or offenses committed prior to Janu
 
 *362
 
 ary 1,1969. The Marchands note that this Court has refused to allow insurance companies to avoid their obligations where the insured corporation is dissolved, and cites to several cases including
 
 Hoemer
 
 to support their position.
 

 In
 
 Hoemer,
 
 an asbestos worker and his wife brought a products liability action against his employers, asbestos contractors, and asbestos distributors Infollowing his contraction of asbestosis. Maryland Casualty was found to have provided liability insurance to Marquette Insulations for two of three years during which the jury found Marquette Insulations liable as a professional vendor for damages flowing from Mr. Hoerner’s contraction of asbestosis. Maryland Casualty claimed that the trial court judgment was improper because the plaintiffs’ cause of action against Marquette Insulations was preempted three years after the company was judicially dissolved in 1981 pursuant to La. R.S. 12:147(D).
 

 In the trial court plaintiffs’ claims were held not to have been preempted. This Court affirmed the ruling on that issue and stated as follows:
 

 Under the provisions of LSA-R.S. 12:147(D), a claim against a dissolved corporation is “barred perpetually and peremptorily” if not brought within three years of its dissolution. Thus, Maryland Casualty argues, claims against an insurer of a dissolved company are also preempted. However, Maryland Casualty admits that LSA-R.S. 12:173(A) specifically limits the peremption to causes of action accruing before 1969. Thus, the real question to be decided is whether Mr. Hoerner’s claim against Marquette Insulations accrued before 1969 ... Maryland Casualty admits that evidence presented at trial indicates that Mr. Hoerner was exposed to asbestos products sold or installed by Marquette Insulations during the years 1964,1965, and 1966.
 

 The issue of when the Hoerners’ claim against Marquette Insulations, and thus Maryland Casualty, accrued is controlled by the Louisiana Supreme Court’s decision in
 
 Cole v. Celotex Corp.,
 
 599 So.2d 1058 (La.6/30/92). Cole established a “significant exposure” test for determining when a cause of action accrues in a long-latency disease case.
 
 Abadie v. Metropolitan Life Insurance Co.,
 
 00-344, p. 16 (La.App. 5 Cir. 3/28/01), 784 So.2d 46, 64. Because the evidence indicates that Mr. Hoerner was significantly exposed to asbestos-containing products manufactured by Marquette Insulations in 1964, 1965, 1966, the Hoerners’ cause of action accrued prior to 1969, making LSA-R.S. 12:148(C) inapplicable to this case. Thus, we find no merit in Maryland Casualty’s peremption arguments.
 

 Hoerner,
 
 2002-2333, p. 37-38, 812 So.2d at 71-72.
 

 Per the provisions of La. R.S. 12:147(D), a claim against a dissolved corporation is “barred perpetually and peremptorily” if not brought within three years of its dissolution. However, La. R.S. 12:173(A) specifically provides:
 

 A. Except as otherwise expressly provided in this Chapter, all of the provisions of this Chapter shall be applicable to every existing corporation on January 1, 1969, formed under the laws of this state for a purpose or purposes for which a corporation might be formed under this Chapter; provided that this Chapter shall not affect or impair any right of any existing corporation which is guaranteed or protected by the constitution of this state or of the United States; and provided further that this Chapter shall not be construed to impair or affect any act done, offense commit
 
 *363
 
 ted, or right accruing, accrued, or acquired, or liability, penalty, forfeiture, or punishment incurred, prior to January 1, 1969, but the same may be enjoyed, asserted and enforced, prosecuted or inflicted as fully, and to the same extent, as if this Chapter had not been enacted.
 

 The plain wording of the above statute clearly states that the provisions of the Chapter are applicable to corporations existing on January 1,1969, and “shall not be construed to impair or affect any act done, offense committed, or right accruing, accrued, or acquired, or liability, penalty, forfeiture, or punishment incurred, prior to January 1, 1969”. Since Mr. Marchand was exposed to asbestos from approximately 1943 to 1945, while he was employed at Pendelton, the Marchands’ survival cause of action accrued prior to 1969 and is not preempted. However, because the wrongful death cause of action accrued on January 16, 2009, the Marchands’ wrongful death cause of action is subject to the peremptive bar of La. R.S. 12:173(A).
 

 The Marchands also correctly argue that Louisiana law allows suit against the remaining assets of a dissolved corporation because La. R.S. 12:147(C) | isspecifically provides that suits are allowed against any remaining undistributed assets of a dissolved corporation. The Marchands also argue that they have a right of action against Continental as third party beneficiaries on Pendleton’s insurance policy, and that La. R.S. 22:1269(A) vests a substantive cause of action directly against the insurer.
 

 Despite this argument, a careful review of the writ application does not indicate that any copies of insurance contracts or other documentation has been provided. Nevertheless, a discussion regarding case law on this subject is in order. In
 
 Leviere v. Williams,
 
 2002-1816, p. 5 (La.App. 4 Cir. 1/17/03), 844 So.2d 32, 36, this court discussed third party beneficiaries and noted:
 

 We note that the current law in this circuit is found in
 
 Sturcke v. Clark,
 
 261 So.2d 717 (La.App. 4 Cir.1972). In
 
 Sturcke,
 
 a defendant driver involved in an automobile accident had paid his insurer, Carver General Insurance Company, a premium for both collision and liability insurance. Due to a clerical error, Carver failed to issue a liability policy to the driver. The plaintiffs insurer filed a third party action against Carver to enforce the contract for liability insurance as a third party beneficiary to the policy. The court noted that although Carver was not an insurer liable to the plaintiff under R.S. 22:655, “it did undertake an obligation for the benefit of third parties like plaintiff, La. C.C. art. 1890 and plaintiff therefore had a right of action_”
 
 Id.
 
 at 721. Thus, the law of this circuit supports a cause of action to enforce insurance contracts by third party beneficiaries to those contracts. La. R.S. 22:655 establishes that an injured party is a third party beneficiary to an insurance policy.
 

 Based on the rule set forth in Leviere, La. R.S. 22:655 establishes that the Mar-chands are third party beneficiaries to the policy and have a right to sue to enforce the policy.
 
 See also
 
 La. C.C. art. 1978.
 

 The Marchands’ final argument is that La. R.S. 22:1269(A) vests a substantive cause of action directly against the insurer. The Marchands argue that | uonce the substantive rights are conferred, they become a vested property right and cannot be constitutionally divested by actions which are beyond the control of the victim. La. R.S. 22:1269(A) provides:
 

 A. No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bank
 
 *364
 
 ruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person, or his or her survivors, mentioned in Civil Code Art. 2315.1, or heirs against the insurer.
 

 Earlier in our discussion, we concluded that the Marchands have a right of action against Continental via the Direct Action Statute prior to the 1989 amendments for their survival cause of action based on the date that their cause of action accrued. However, because the Marchands’ wrongful death cause of action accrued upon Mr. Marchand’s death in 2009, the peremptive bar of La. R.S. 12:147(D) is applicable.
 

 DECREE
 

 The district court erred when the court sustained Continental’s peremptory exception of no right of action based on corporate dissolution as to the Marchands’ survival cause of action. Therefore, the Marchands’ writ application is granted in part and the district court judgment granting Continental’s exception of no right of action is vacated. In all other respects, this writ application is denied.
 

 WRIT GRANTED IN PART; WRIT DENIED IN PART.
 

 [1]
 

 . Discussed below.